AF Approval __JH___                    Chief Approval __MPF___

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                    CASE NO. 6:25-cr-27-JA+DCI

MICHAEL ADRIAN NIETO

### PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by

Roger B. Handberg, United States Attorney for the Middle District of Florida,

and the defendant, MICHAEL ADRIAN NIETO, and the attorney for the

defendant, David R. Bigney, mutually agree as follows:

**A.**    **Particularized Terms**

   1.    Count Pleading To

The defendant shall enter a plea of guilty to Count One of the

Information. Count One charges the defendant with Dealing in Firearms

Without a License, in violation of 18 U.S.C. § 922(a)(1)(A).

   2.    Maximum Penalties

Count One carries a maximum sentence of five years imprisonment, a

fine of $250,000, a term of supervised release of not more than three years,

and a special assessment of $100. With respect to certain offenses, the Court

shall order the defendant to make restitution to any victim of the offense(s),

and with respect to other offenses, the Court may order the defendant to make

Defendant's Initials _M N_

restitution to any victim of the offense(s), or to the community, as set forth below.

    3.    <u>Elements of the Offense</u>

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

<u>First</u>:    the Defendant engaged in the business of dealing in firearms;

<u>Second</u>:    the Defendant didn't have a Federal license; and

<u>Third</u>:    the Defendant acted willfully.

    4.    <u>Indictment Waiver</u>

Defendant will waive the right to be charged by way of indictment before a federal grand jury.

    5.    <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.     <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.     <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG § 3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant

complies with the provisions of USSG § 3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG § 3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

    8.   <u>Forfeiture of Assets</u>

    The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

    The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other

means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years.  The defendant further agrees to be interviewed by the

Defendant's Initials __MN__                    5

government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

9.    Abandonment of Property - Firearms

The defendant acknowledges that he has an ownership interest in the following items of property that are in the lawful custody of the United States:

(a) Spikes Tactical, model ST15 Snowflake, 5.56 NATO caliber firearm, bearing serial number LT035011.

(b) Brugger & Thomet, model TP9, 9mm caliber firearm, bearing serial number US 21-50378.

The defendant understands that he has the right and opportunity to claim the listed property. The defendant hereby knowingly and voluntarily waives all right, title, and interest in the listed property. The defendant waives, releases, and withdraws any claim that the defendant has made with respect to

the listed property, and waives and releases any claim that the defendant might otherwise have made to the listed property in the future.

The defendant consents to the vesting of title to the listed property to the United States Government, pursuant to Title 41, Code of Federal Regulations, Section 128-48.102-1. The defendant also consents to the destruction of the property, or other disposition of the property in accordance with law, and without further notice to defendant.

The defendant waives any right the defendant might otherwise have had to receive notice or a hearing with respect to any motion, pleading, order, or any other action that the Government might take, in its sole discretion, to carry out the abandonment, disposition, and/or destruction of the listed property. The defendant's waiver includes, without limitation, all common law, statutory, and constitutional claims or challenges, on any grounds, arising at any time from, or relating to, the seizure, abandonment, disposition, and destruction of the listed property, including any such claim for attorney's fees and litigation costs.

The defendant further agrees to hold the United States of America, its agents and employees, harmless from any claims whatsoever in connection with the seizure, abandonment, disposition, and destruction of the listed property.

B. **Standard Terms and Conditions**

    1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing. To ensure that this obligation is satisfied, the Defendant agrees to deliver a cashier's check, certified check, or

money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense(s) to which the defendant is pleading provide(s) for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to

comments made by the defendant or defendant's counsel, and to correct any

misstatements or inaccuracies. The United States further reserves its right to

make any recommendations it deems appropriate regarding the disposition of

this case, subject to any limitations set forth herein, if any.

  5.  <u>Financial Disclosures</u>

  Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),

the defendant agrees to complete and submit to the United States Attorney's

Office within 30 days of execution of this agreement an affidavit reflecting the

defendant's financial condition. The defendant promises that his financial

statement and disclosures will be complete, accurate and truthful and will

include all assets in which he has any interest or over which the defendant

exercises control, directly or indirectly, including those held by a spouse,

dependent, nominee or other third party. The defendant further agrees to

execute any documents requested by the United States needed to obtain from

any third parties any records of assets owned by the defendant, directly or

through a nominee, and, by the execution of this Plea Agreement, consents to

the release of the defendant's tax returns for the previous five years. The

defendant similarly agrees and authorizes the United States Attorney's Office

to provide to, and obtain from, the United States Probation Office, the

financial affidavit, any of the defendant's federal, state, and local tax returns,

bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly

Defendant's Initials _M N_                    12

reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. 3742(a).

8.    Middle District of Florida Agreement

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind

Defendant's Initials _M N_                    13

other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the

right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    <u>Factual Basis</u>

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the

government and the defendant with respect to the aforementioned guilty plea

and no other promises, agreements, or representations exist or have been

made to the defendant or defendant's attorney with regard to such guilty plea.

13.    Certification

The defendant and defendant's counsel certify that this plea agreement

has been read in its entirety by (or has been read to) the defendant and that

defendant fully understands its terms.

DATED this ___28___ day of January, 2025

ROGER B. HANDBERG
United States Attorney

_____
Michael Adrian Nieto
Defendant

_____
Noah P. Dorman
Assistant United States Attorney

_____
David R. Bigney
Attorney for Defendant

_____
Michael P. Felicetta
Assistant United States Attorney
Chief, Orlando Division

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                      CASE NO. 6:25-cr-27-JA-DCI

MICHAEL ADRIAN NIETO

PERSONALIZATION OF ELEMENTS

Beginning at a date unknown but no later than November 2023, and

continuing through at least October 17, 2024, in the Middle District of

Florida:

First:      Did you engage in the business of dealing in firearms, that is, did
            you devote time, attention, and labor to dealing in firearms as a
            regular course of trade or business to predominantly earn a profit
            through the repetitive purchase and resale of firearms?[1]

Second:     Did you do so without a Federal License?

Third:      Did you act willfully?

_____

[1] *See*, 18 U.S.C. § 922(a)(21)(C)

Defendant's Initials __M N__          17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:25-cr-27-JA-DCI

MICHAEL ADRIAN NIETO

<u>FACTUAL BASIS</u>

On or about November 3, 2023, ATF initiated an investigation of an organization obtaining firearms within the Middle District of Florida and smuggling those firearms to the Dominican Republic, Puerto Rico, and Haiti (the "Organization"). The Organization utilizes "straw purchasers" to obtain firearms. Straw purchasers are individuals who obtain firearms from federal firearms licensees ("FFLs") and private sellers on behalf of other individuals.

ATF agents identified several individuals associated with the Organization, including ERNESTO VAZQUEZ, DERICK YAMIR PEREZ DIAZ, MATTHEW EASTON, and Cooperating Defendant 1 ("CD-1"). Together, these individuals sold over 100 guns to firearms traffickers operating in the Middle District of Florida and elsewhere.

On April 17, 2024, VAZQUEZ and PEREZ DIAZ were indicted in the Middle District of Florida on federal firearms trafficking related offenses,

Defendant's Initials _MN_                18

including Conspiracy to Traffic Firearms, Firearms Trafficking, and Dealing in Firearms without a license (*see*, 6:24-cr-100-CEM-DCI).

On April 18, 2024, ATF agents arrested VAZQUEZ at his residence. In connection with VAZQUEZ's arrest, his cell phone was seized.

Analysis of VAZQUEZ's cell phone data extraction provided evidence of multiple firearms transactions between VAZQUEZ and straw purchasers of firearms. VAZQUEZ had numerous text message conversations with phone number 520-556-2911 (the "2911 Number"), from January 17, 2024, to April 15, 2024, regarding the purchase and sale of firearms.

Law enforcement identified the user of the 2911 Number as MICHAEL ADRIAN NIETO, who received his commission as a sworn law enforcement officer in the State of Florida in March 2023. The conversations revealed that NIETO supplied firearms to VAZQUEZ and corruptly used police databases to provide sensitive and confidential information to VAZQUEZ.

For example, on February 13, 2024, VAZQUEZ requested that NIETO run a license plate number for him:

> **VAZQUEZ**: "***U at work? Run this plate for me.*** *Yesterday night he was here and one guy was in it all night then when I leave still there and when I came back he's still in the car and I'm not fucking with it*"

> **NIETO**: "***Weird he probably watching you***, *I'm not at work though*"

> **VAZQUEZ**: "*Cars not from my neighborhood and this the second day in the row same position like he hasn't left at all,* ***Trynna see if it's alphabet boys'***

Defendant's Initials __M N__          19

Notably, VAZQUEZ indicates that he would like to know if the individual(s) in the vehicle are "alphabet boys." The phrase "alphabet boys" is commonly used to refer to the FBI, DEA, ATF, CIA, and other "alphabet" government agencies. NIETO confirms that he will run the license plate "tomorrow."

On March 7, 2024, VASQUEZ sent a license plate for NIETO to run for him. On March 8, 2024, NIETO responded to VAZQUEZ: "*The plate shows Orlando.*" Agents were able to confirm through the Florida Department of Law Enforcement that the license plate was ran twice by NIETO on March 8, 2024, using his official access to the Driver and Vehicle Information Database.

The review of communications between VAZQUEZ and NIETO revealed evidence of multiple instances of the purchase and sale of firearms.

For example, between January 17, 2024, and January 18, 2024, VAZQUEZ and NIETO discussed the sale and transfer of a firearm from NIETO to VAZQUEZ. NIETO offered to sell a "Sugar Weasel" to VAZQUEZ, an AR-15 style rifle for $700:

**NIETO**: *This guy flaked on the sugar weasel today smh*

**VAZQUEZ**: *When can I grab that*

On January 18, 2024, NIETO states that he "can do 700." VAZQUEZ

responds confirming the transaction:

> **VAZQUEZ**: *Bet send me the location*

Subsequent text messages suggested that the parties met for the transaction:

> **VAZQUEZ:** *I don't see you*

> **VAZQUEZ:** *I'm with the 18 wheelers are loading up at*

> **VAZQUEZ:** *Nvm*

On February 10, 2024, NIETO texts VAZQUEZ and asks, "*Still want

some Glocks?*" VAZQUEZ responds "*Yes papi[.]*" NIETO responds "*Bet I'll lyk,

might have a trade coming in[.]*"

On February 16, 2024, VAZQUEZ sent a message to NIETO asking

him to "*Go get some aks cheapest from a pawnshop and I'll give you 1k*".

VAZQUEZ also added "*They go for 6-7*".

On March 12, 2024, NIETO sent messages to VAZQUEZ letting him

know that he was picking up a Glock 34: "*Picking up that G34 if you want to link

tomorrow.*" Later that day, NIETO sent the following message to VAZQUEZ:

"*I got the 34 for you.*"

On March 16, 2024, NIETO and VAZQUEZ have the following

conversation regarding the sale of a Glock pistol:

> **NIETO**: *Glock 19 Gen 4*

**VAZQUEZ**: *Bet I'll grab it*

**NIETO**: *Bet*

Later, on March 18, 2024, VAZQUEZ texts NIETO: "*Got the 19 payed for you.*"

On March 20, 2024, NIETO and VAZQUEZ have the following conversation regarding the sale of additional firearms:

**NIETO:** *Getting another Glock soon btw*

**NIETO:** *Maybe AK*

**VAZQUEZ:** *Ur all good pa there's no rush when it comes to you just lmk when it's in and we good*

On March 23, 2024, VAZQUEZ texts NIETO to follow up on the purchase of a Glock firearm:

**VAZQUEZ:** *U ever get those in ?*

**NIETO:** *The Glock?*

**VAZQUEZ**: *Yeah*

**NIETO**: *Just waiting for it to get delivered to the store*

On March 26, 2024, NIETO and VAZQUEZ have the following conversation:

**NIETO**: *You guys need ARs too?*

**VAZQUEZ:** *Depends the size*

**VAZQUEZ:** *Smaller the better*

On March 29, 2024, NIETO negotiates the sale of an AR-15 style rifle to VAZQUEZ and his co-conspirators:

**NIETO:** *Should have an AR for you*

**VAZQUEZ:** *Size?*

**NIETO:** *7.5 inch*

**NIETO:** *How much you buy the ARs for? I forgot*

**VAZQUEZ:** *Ima be very honest Idek it's been a long time since I've bought one*

**NIETO:** *I thought they were the same price as the AKs tbh*

**NIETO:** *As long as they didn't have the front sight lol*

**VAZQUEZ:** *Nah papi there's no way they the same as a ak 🤣. Ak is the highest price*

**VAZQUEZ:** *Last ar I bought was like 750-800 aks are a band all day but for you ima pay aks a lot higher once I get word I can*

**VAZQUEZ**: *This ak u bring for the ar u took ur gonna get 1200 for it*

**NIETO:** *The MPX?*

**VAZQUEZ:** *Yeah*

**NIETO**: *Does he only want AKs and Glocks?*

**VAZQUEZ**: *For that trade off yes. ARs is between you and me I'll Get rid of it somewhere else*

On April 2, 2024, NIETO and VAZQUEZ have the following conversation regarding the sale of three Glock pistols and an AR rifle:

**NIETO**: " *Yo my homie got a Glock 45 for sale*", "*I told him I know a guy*"

**VAZQUEZ**:" *What happen to the one you had on the way pa*", "*And bet I'll cop it*"

**NIETO**: "*Need to pick it up at the store, I actually got 2 17s coming in*"

**VAZQUEZ**: "*When can we get them* 😂"

**NIETO**: "*Waiting for the 17s to be delivered, the 45 I can get tomorrow*", "*You got the cash on hand for the 45?*"

**VAZQUEZ**: "*Yeah later on I will*", "*Comes with the trijicon* 👀"

**NIETO**: "*Like tomorrow?*", "*Trijicon is 400 if you want it*"

**VAZQUEZ**: "*And gun ?*"

**NIETO**: "*The usual price*"

**VAZQUEZ**: "*Yeah I'll cop and the sight I'll think about it*"

**NIETO**: "*Bet, it's lit*", "*I'll let him know*", "*No movement on the AR?*"

**VAZQUEZ**: "*I'll give you the 600 and keep it for awhile till it goes*", "*So u can get the ak and we can close out that trade we got up*"

A review of the purchase history for firearms purchased by NIETO at FFLs in the Middle District of Florida revealed that, between June 6, 2022, and September 4, 2024, NIETO purchased 58 firearms from FFLs for a total of $29,968.25. Many of the firearms were identical and were purchased together or close in time to one another.

Defendant's Initials  M N        24

On October 17, 2024, law enforcement executed a federal search warrant at NIETO's residence in Saint Cloud, Florida.  Of the 58 firearms NIETO purchased from FFLs, only twelve were still in his possession at the time of the search.

Analysis of NIETO's communications with VAZQUEZ established that NIETO would resell firearms that he purchased at a higher price, thereby making profit on the repeated sales.  Between November 2023, and October 17, 2024, NIETO repeatedly purchased and resold firearms to multiple individuals as a regular course of business to predominately earn a profit, in violation of 18 U.S.C. § 922(a)(1)(A), including at least the following firearms to be sold to VAZQUEZ:

**Sugar Weasel**

On December 9, 2023, NIETO purchased a Q LLC, model SUGAR WEASEL, 5.56 caliber rifle bearing serial number MD02234.  Thereafter, between January 17, 2024, and January 18, 2024, VAZQUEZ and NIETO discussed the sale and transfer of the firearm from NIETO to VAZQUEZ:

> **NIETO**: *This guy flaked on the sugar weasel today smh*

> **VAZQUEZ**: *When can I grab that*

On January 18, 2024, NIETO states that he "can do 700." VAZQUEZ responds confirming the transaction:

> **VAZQUEZ**: *Bet send me the location*

Subsequent text messages suggested that the parties met for the transaction:

> **VAZQUEZ:** *I don't see you*

> **VAZQUEZ:** *I'm with the 18 wheelers are loading up at*

> **VAZQUEZ:** *Nvm*

## Glock Model 17s

On April 2, 2024, NIETO and VAZQUEZ discussed the sale of two Glock Model 17 pistols:

> **NIETO**: " *[. . .] I actually got 2 17s coming in*"

> **VAZQUEZ**: "*When can we get them* 😩"

> **NIETO**: "*Waiting for the 17s to be delivered[.]*", "

On April 25, 2024, NIETO purchased the following pistols to be delivered to VAZQUEZ:

- GLOCK, model 17 GEN4, 9mm caliber pistol with serial number XGA819;

- GLOCK, model 17 GEN4, 9mm caliber pistol with serial number XGA827.

However, on April 18, 2024, ATF agents arrested VAZQUEZ at his residence. Due to VAZQUEZ's arrest, NIETO was unable to complete the sale.

On October 17, 2024, NIETO was interviewed by federal agents regarding his possession of prohibited items and his involvement in dealing

firearms without a license.  After waiving his rights, NIETO admitted to repeatedly buying and reselling guns to individuals on Florida Gun Trader, including VAZQUEZ.  He admitted knowing that VASQUEZ was transferring these guns to third parties, in violation of federal law.  NIETO further admitted to possessing prohibited items, such as the items listed above that were recovered in his residence.  NIETO reported that VASQUEZ also provided him with prohibited items, including a machinegun conversion device that NIETO stated he destroyed.

On November 6, 2024, NIETO, with counsel present, provided a voluntary interview to law enforcement.  NIETO advised that he worked part time at a firearms store and was a gun enthusiast and a collector.  He stated that he began reselling firearms for profit in November 2023.  Of the 58 firearms he purchased since June 6, 2022, NIETO estimated he sold 30 of the firearms to buyers on the Florida Gun Trader website, to family and fellow police officers.  NIETO stated he profited approximately $7500 from these sales.  NIETO estimated he sold fifteen firearms to VAZQUEZ.  NIETO stated that VASQUEZ showed NIETO a Florida Concealed Weapon Permit (CWP) prior to the first sale of firearms, but admitted that he knew the firearms he sold to VAZQUEZ would be trafficked because VAZQUEZ told him that the firearms were being sent out of the country.

Defendant's Initials _M N_                27

The above is merely a summary of some of the events, some of the persons involved, and other information relating to this case. It does not include, nor is it intended to include, all the events, persons involved, or other information relating to this case.

Defendant's Initials __M N__          28